**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------------X
In re:                                                            Chapter 7

    Dmitry Perelman,                                  Case No. 108-45953-jf


                Debtor.
----------------------------------------------------------------------X


## DECISION AND ORDER DISMISSING CHAPTER 7 CASE FOR ABUSE UNDER 11 U.S.C. § 707(b)(1), UNLESS CONVERTED TO A CASE UNDER CHAPTER 11 OR CHAPTER 13 OF THE BANKRUPTCY CODE


**APPEARANCES:**

**Diana G. Adams**
**United States Trustee**
**271 Cadman Plaza East, Suite 4529**
**Brooklyn, New York 11201**
**By: William E. Curtin, Esq.**
    **Trial Attorney**



**John C. Sieck, Esq.**
**250 West 57th Street, Suite 1200**
**New York, New York 10019**
**Attorney for Debtor**



                **JEROME FELLER**
          **United States Bankruptcy Judge**

Before the Court is a motion of the United States Trustee ("UST") under 11 U.S.C. § 707(b)(1) to dismiss the above-captioned Chapter 7 case of Dmitry Perelman ("Debtor") as an abuse of the provisions of Chapter 7 of the Bankruptcy Code ("Motion").  The abuse is predicated upon 11 U.S.C. § 707(b)(2), the Means-Test or, in the alternative, on 11 U.S.C. § 707(b)(3), a totality of the Debtor's financial situation.  The UST does not believe that the Debtor is an individual eligible to receive an immediate unconditional discharge of personal liabilities for debts in exchange for the liquidation of non-exempt assets under Chapter 7.  She contends that the Debtor has the ability to pay under a bankruptcy repayment plan a substantial portion of his indebtedness before obtaining a discharge.

There are two important issues animating this hotly contested dispute.  First, whether an above-median debtor in a Chapter 7 case is allowed under the Means-Test to take deductions for payments on secured debt when the debtor states an intent to surrender the underlying collateral. Second, if the answer to the first issue is in the affirmative and the debtor as a result passes the Means-Test, meaning that there is no presumption of abuse, may the Chapter 7 case nonetheless be dismissed as an abuse based upon an ability to pay.

For the reasons hereinafter set forth, we conclude that the Debtor was allowed to take the secured debt expense deductions under § 707(b)(2)(A)(iii) and consequently passed the Means-Test.  However, even though the Debtor passed the Means-Test and there is no presumption of abuse under § 707(b)(2), the totality of the Debtor's financial situation nonetheless demonstrates abuse of Chapter 7.  Accordingly, the Motion of the UST is granted based on § 707(b)(3)(B) and the above-captioned Chapter 7 case is dismissed, unless converted to Chapter 11 or Chapter 13 of the Bankruptcy Code.

**I.**

The UST and the Debtor do not dispute the facts deemed by them to be relevant to disposition of the Motion.  On September 9, 2009, the Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code ("Bankruptcy Code").  Along with his petition the Debtor filed all required schedules and statements, including a Chapter 7 Statement of Current Monthly Income and Means-Test Calculation on Official Form B22A ("Means-Test Form").  *See* 11 U.S.C. § 707(b)(2)(C); Fed. R. Bankr. P. 1007(b)(4).  On the Means-Test Form, the Debtor checked off the box on the front of the form, indicating that "[t]he presumption of abuse does not arise".  The debtor also filed a Chapter 7 Debtor's Statement of Intent on Official Form B8 ("Statement of Intent").  *See* 11 U.S.C. § 521(a)(2)(A); Fed. R. Bankr. P. 1007(b)(2).

The petition and schedules inform that the Debtor is an unmarried individual without dependants and employed as a computer network engineer for Teleris, Inc.  Schedule D lists a total of $1,465,525 in secured debt.  Schedule F lists $47,897 in unsecured debt consisting of outstanding pre-petition credit card indebtedness.  Both in quantity of claims and amount, these debts are primarily consumer debts as defined in 11 U.S.C. § 101(8).

For purpose of the Means-Test and Schedule I, the UST and Debtor stipulated, that the Debtor's current monthly income is $11,244, and, as such, computes out to an annualized income of $134,928.  *See* Doc. No. 17.  Since in New York State the median annual income for a household size of one is $44,587, the Debtor's annual income places him in the category of an above-median debtor for purposes of the Means-Test.

As an above-median debtor, the Debtor was required to complete the expense deduction portion of the Means-Test Form.  Lines 42 and 43 provide for deductions from current monthly income for future payments on debts secured by an interest in property, and if such property is a debtor's residence, a further deduction for monthly payments to cure pre-petition arrearages over

3

a 60 month period.  Schedule A states that the Debtor is the owner of two condominiums.  One property is the Debtor's residence at 60 Broadway, Unit 7B, Brooklyn, New York, which property is appraised at $965,000 and is encumbered by three liens totaling $1,024,273 ("New York Property").  The other is a condominium in Lake Buena Vista Resort Village and Spa, Unit 3704, 8112 Poinciana Boulevard, Orlando, Florida, which property is appraised at $250,000 and is encumbered by two mortgages totaling $441,252 ("Florida Property").  The New York Property and the Florida Property are hereinafter collectively referred to as "the Properties".

Notwithstanding the Statement of Intent filed by the Debtor declaring his intent to surrender the Properties for which he has stopped making secured debt payments, the Debtor took a deduction of $9,171 on Line 42 of the Means-Test Form for future monthly payments on the debts secured by the Properties.  He also took a deduction on Line 43 of $239.00, reflecting a monthly payment needed to cure the pre-petition arrearages on the New York Property over a 60 month period.  After taking into account the deductions on Lines 42 and 43 and other deductions, the Debtor calculates that he has a negative monthly disposable income and concludes that a presumption of Chapter 7 abuse does not arise.

The UST maintains that the Debtor's deductions on Lines 42 and 43 were improper and should be disallowed.  The UST recalculated the figures on the Debtor's Means-Test Form, eliminating the Line 42 and 43 deductions and adding back on Line 20B a deduction under Internal Revenue Service Local Standards for housing and utilities expenses.  Based upon the recomputation, the UST ultimately concluded that the Debtor has monthly disposable income in the amount of $3,779.40, enough for him to make a substantial distribution to unsecured creditors under a bankruptcy repayment plan.  *See* Doc. No. 20 at 2, 5 and 12.  A notice of presumed abuse was filed by the UST as required by § 704(b)(1)(A), followed by a timely filing of the Motion.

## II.

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat 23, became effective on October 17, 2005.   One goal of the BAPCPA was to "address what Congress perceived to be abuses of the bankruptcy process. Among the abuses identified by Congress was the easy access to Chapter 7 proceedings by consumer debtors, who if required to file under Chapter 13, could afford to pay some dividend to their unsecured creditors."   *In re Hardacre,* 338 B.R. 718, 720 (Bankr. N.D. Tex. 2006) (Citing 151 Cong. Rec. S2549, 2469-70 (Mar. 10, 2005)).   The principal method fashioned to steer debtors away from Chapter 7 and into a bankruptcy repayment plan is a retooled version of § 707(b).

Section 707(b)(1) now provides that, the court, after notice and a hearing, may dismiss a Chapter 7 case or, with the debtor's consent, convert the case to one under Chapter 11 or Chapter 13, if the court finds that the granting of relief under Chapter 7 would be an abuse of the provisions of Chapter 7.   Prior to the enactment of the BAPCPA, Section 707(b) of the Bankruptcy Code provided for the dismissal of a Chapter 7 case when the granting of relief would be a "substantial abuse" of the provisions of Chapter 7.   BAPCPA altered the circumstances under which a Chapter 7 case may be dismissed by removing the "substantial" qualifier and provided for "abuse" to be determined pursuant to either the new § 707(b)(2) or the new § 707(b)(3).   When a debtor's disposable income exceeds fixed amounts (i.e., when the debtor fails the Means-Test), the new § 707(b)(2) creates a presumption of abuse.   When the presumption of abuse does not arise (i.e., when the debtor passes the Means-Test), the new § 707(b)(3) looks to whether the debtor filed the petition in bad faith or if the totality of the circumstances of the debtor's financial situation demonstrates abuse.

5

Section 707(b)(2) codifies a Means-Test which provides a formula which calculates a debtor's average monthly disposable income over a 60 month period by deducting statutorily specified allowable expenses, secured debt payments and priority debt payments from current monthly income. Current monthly income is defined in 11 U.S.C. § 101(10A) as the average monthly income of a debtor from all sources in the six month period prior to commencement of the bankruptcy case. The authorized deductions from current monthly income are detailed in § 707(b)(2)(A)(ii-iv). If the resulting income figure exceeds certain mathematical threshold amounts, the Chapter 7 bankruptcy filing is presumptively abusive. *See* 11 U.S.C. § 707(b)(2)(A)(i). Specifically, the mathematical threshold amounts identified in § 707(b)(2)(A)(i) that trigger a presumption of abuse are as follows: 1) if the debtor has at least $182.50 in monthly disposable income (that is, in the language of the statute, if the debtor's monthly disposable income, multiplied by 60, is not less than $10,950), abuse is presumed regardless of the amount of the debtor's non-priority unsecured debt; and 2) if the debtor has at least $109.58 of monthly disposable income (that is, in the language of the statute, $6,575 over a 60 month period), abuse is presumed if the income is sufficient to pay at least 25% of the debtor's non-priority unsecured debt. *See* Eugene R. Wedoff, *Means Testing In The New § 707(b)*, 79 Am. Bankr. L.J. 231, 241-42 (2005).

The initial dispute between the Debtor and the UST in this case is the propriety of the Debtor's deduction under § 707(b)(2)(A)(iii) of secured debt payments related to the Properties intended to be surrendered. As indicated above, the Debtor believes that no presumption of abuse arises, because he properly took the deductions, resulting in a negative monthly disposable income. On the other hand, the UST contends that the deductions were improper, resulting in the Debtor far exceeding the mathematical threshold amounts triggering a presumption of abuse under the Means-Test.

6

## III.

In delineating the nature and extent of secured debt payments deductions under the Means-Test, § 707(b)(2)(A)(iii) reads in full as follows:

> [t]he debtor's average monthly payments on account of secured debts shall be calculated as the sum of —
>
> > (I)    the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and
> >
> > (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;
>
> divided by 60.

11 U.S.C. § 707(b)(2)(A)(iii).

There is a split of the authority in the decided cases on the meaning of this provision. The split revolves over whether this provision reflects the debtor's present financial position (that is, at the time a debtor files the Chapter 7 petition), or the debtor's anticipated future financial position.  The vast majority of courts to consider this issue have concluded that the plain language of the statute permits a Chapter 7 debtor to deduct payments on secured debt even when the debtor plans to surrender post-petition the collateral underlying that debt.  *See, e.g., Morse v. Rudler (In re Rudler)*, 576 F.3d 37 (1st Cir. 2009); *In re Norwood-Hill*, 403 B.R. 905 (Bankr. M.D. Fla. 2009); *In re Stewart*, 410 B.R. 912 (Bankr. D. Or. 2009);  *In re Harvey*, 407 B.R. 867 (Bankr. W.D. Va. 2009); *In re Ralston*, 400 B.R. 854 (Bankr. M.D. Fla. 2009); *In re Parada*, 391 B.R. 492, 496-98 (Bankr. S.D. Fla. 2008); *Lynch v. Haenke*, 395 B.R. 346 (E.D.N.C. 2008); *In re Makres*, 380 B.R. 30 (Bankr. N.D. Okla. 2007); *In re Galyon*, 366 B.R.

164 (Bankr. N.D. Okla. 2007); *Stapleton v. Mundy* (*In re Mundy*), 363 B.R. 407 (Bankr. M.D. Pa. 2007); *In re Hayes*, 376 B.R. 55 (Bankr. D. Mass. 2007). *In re Maya*, 374 B.R. 750 (Bankr. S.D. Cal. 2007); *In re Benedetti*, 372 B.R. 90 (Bankr. S.D. Fla. 2007); *In re Kelvie*, 372 B.R. 56, 60-62 (Bankr. D. Idaho 2007); *Fokkena v. Hartwick*, 373 B.R. 645, 653-655 (D. Minn. 2007); *In re Longo*, 364 B.R. 161 (Bankr. D. Conn. 2007); *In re Harwick*, 359 B.R. 16 (Bankr. D. N.H. 2007); *In re Randle*, 358 B.R. 360 (Bankr. N.D. Ill. 2006), *aff'd*, 2007 WL 2668727 (N.D. Ill. 2007); *In re Simmons*, 357 B.R. 480, 483-86 (Bankr. N.D. Ohio 2006); *In re Nockerts*, 357 B.R. 497, 497-505 (Bankr. E.D. Wis. 2006); *In re Walker*, 2006 WL 1314125 (Bankr. N.D. Ga. 2006). On the other side of the fence is a minority line of cases espousing the view that a debtor may not deduct payments on secured debt, if the debtor has stated an intent to surrender the collateral. *See In re Naut,* 2008 WL 191297 (Bankr. E.D. Pa. 2008); *In re Burden*, 380 B.R. 194 (Bankr. W.D. Mo. 2007); *In re Masur*, 2007 WL 3231725 (Bankr. D.S.D. 2007); *In re Skaggs*, 349 B.R. 594 (Bankr. E.D. Mo. 2006); *In re Harris*, 353 B.R. 304 (Bankr. E.D. Okla. 2006); *In re Ray*, 362 B.R. 680 (Bankr. D.S.C. 2006). We are persuaded that the majority view best comports with the statutory language of § 707(b)(2)(A)(iii)(I) and is not at odds with the legislative intent of the Means-Test for purposes of determining eligibility for Chapter 7 relief.[1]

We begin with the cardinal principle of statutory construction that Congress "says in statute what it means and means in a statute what it says." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254, 112 S. Ct. 1146, 1149 (1992). The ordinary common sense meaning of the words "amounts scheduled as contractually due to secured creditors in each of the 60 months

---

[1] We do not address here the construction of § 707(b)(2)(iii)(I) in the context of plan confirmation in Chapter 13 cases. Although, we hold that monthly payments on secured property to be surrendered are properly deducted to determine Chapter 7 eligibility under the Means-Test, whether such payments are properly deducted in calculating expenses to determine a Chapter 13 debtor's "projected disposable" income for purposes of plan confirmation involve different considerations. *See* 11 U.S.C. § 1325(b)(1) (requiring for Chapter 13 confirmation that "projected disposable income" be determined as the "effective date of the plan"); 11 U.S.C. § 1325(b)(3) (referencing § 707(b)(2) in connection with Chapter 13 plan confirmation for the calculation of disposable income for above-median Chapter 13 debtors); *In re Norwood-Hill*, 403 B.R. at 909-910.

following the date of the petition" preceded by a mandatory "shall" clearly authorize deductions of the amounts to which a debtor is contractually bound as of the date the bankruptcy petition was filed. As stated in the seminal case construing § 707(b)(2)(A)(iii):

> [t]he common meaning of "as contractually due" is that the debtor is legally obligated under the contract, in this case, a promissory note to make a payment in a certain amount, with a certain amount of interest, for a set number of months into the future. Accordingly, payments that are "scheduled as contractually due" are those payments that the debtor will be required to make on certain dates in the future under the contract.

*In re Walker*, 2006 WL 1314125, at *3.

There is no conditional language in § 707(b)(2)(A)(iii) that requires that a debtor must intend to continue to pay the contractually due amounts in order to claim the expense. A debtor's intent to surrender collateral does not alter his contractual obligations to make payments on the underlying obligation. Nothing the debtor does or does not do changes the fact that the scheduled payments at the time of petition filing remain contractually due. *See In re Rudler*, 576 F.3d at 45-46; *In re Hartwick*, 359 B.R. at 19; *In re Randle*, 358 B.R. at 362-63. The plain language of § 707(b)(2)(A)(iii) allows a debtor to deduct the amount due under his contracts for secured debt, regardless of whether he intends to reaffirm or surrender the property. If Congress had intended otherwise, it could have easily said so, excluding secured debt payments where the debtor has stated an intention to surrender the collateral. On the other hand, Congress could have specified that only payments the debtor actually intended to make post-petition should be deducted from income. But Congress chose neither of these alternatives. Congress' choice of language shows a clear intent not to impose any such limit on debtors.

There is no dispute as to the nature of the Debtor's obligations to the holders of the secured debt on the Properties. At the time the bankruptcy petition was filed, the Debtor was contractually obligated to make monthly payments in fixed amounts on both the New York

Property and the Florida Property. Accordingly, the Debtor properly took the deductions for such payments under the Means-Test even though he declared his intention to surrender the Properties and stopped making payments.

The UST maintains that § 707(b)(2)(A)(iii) allows debtors to deduct from their current monthly income only those payments on account of secured debt that they will actually pay after the filing of the petition. Such a forward looking reading of the statute, the UST argues, is consistent with the intent of Congress in enacting BAPCPA and § 707(b) to ensure that debtors with above-median income repay their unsecured creditors as much as they could afford.

The position of the UST is not sustainable for several reasons. The fundamental rule of statutory interpretation that one must first look to the specific language of the statute to determine congressional intent is overlooked by the UST. *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S. Ct. 1026, 1031 (1989) ("The plain meaning of the legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrable at odds with the intention of its drafters.") (citations omitted). Like the rest of the Means-Test, § 707(b)(2)(A)(iii) is patent in its calling for a "snapshot" of the debtor's obligations or circumstances on the date the bankruptcy petition was filed. *See, e.g., In re Rudler*, 576 F.3d at 50; *In re Randle*, 358 B.R. at 366; *In re Haar*, 360 B.R. 759, 767 (Bankr. N.D. Ohio 2007); *In re Beneditti*, 372 B.R. 90, 96-97 (Bankr. S.D. Fla. 2007); *In re Walker*, 2006 WL 1314125, at *6 ("Congress intended for the Means-Test to be applied to the facts in existence at the time of filing, without reference to what the debtor will do in the future."). As shown above, the plain language of § 707(b)(2)(A)(iii) authorizes a debtor to deduct the amount due under his contracts for secured debt, regardless of whether he intends to reaffirm or surrender the property and not make payments.

The UST seems to forget that Congress had more than one purpose when creating the

Means-Test.  Not only did Congress seek to require debtors to repay as much as they could to their pre-petition creditors, but also sought to create a mechanical formula for presuming abuse under Chapter 7.  *See In re Randle,* 2007 WL 2608727, at \*9 (N.D. Ill. 2007).  This intent is apparent throughout § 707(b)(2).  The debtor's current monthly income is based upon an average of the debtor's income during the six month period prior to the petition filing.  The debtor's actual post-petition income is irrelevant.  *See* 11 U.S.C. § 101(10A); 11 U.S.C. § 707(b)(2)(A)(i). Additionally, the expense deductions allowed are not primarily based upon a debtor's actual expenses.  Instead, debtors are permitted, for the most part, to deduct standard expenses set by the Internal Revenue Service National and Local Standards.  *See* 11 U.S.C. § 707(b)(2)(A)(ii). In the context of the secured debt payment deduction allowed by § 707(b)(2)(A)(iii), this mechanical approach, while perhaps divorced from reality, statutorily avoids the inherent uncertainties that surround a debtor's announced, but not executed intent to surrender property. *See In re Rudler*, 576 F.3d at 50; *see also In re Walker*, 2006 WL 1314125, at \*6 ("The Means-Test is, after all, a mechanical estimate of the debtor's abilities to fund a Chapter 13 plan and was not intended to be a perfect indicator of ability to pay.").  In effect, the UST urges this Court to rewrite the statute because she believes a different method of assessing presumed abuse would be more effective.  We decline to do so.  As one federal appellate court admonished:

> [t]he Supreme Court and this Court have warned on countless occasions against judges 'improving' plain statutory language in order to better carry out what they perceive to be the legislative purposes.

*Bracewell v. Kelley (In re Bracewell)*, 454 F.3d 1234, 1240 (11th Cir. 2006) (citing *Lamie v. U.S.*, 540 U.S., 526, 538, 124 S. Ct. 1023, 1032 (2006)).

## IV.

As the Court has determined that the presumption of abuse under the Means-Test codified in § 707(b)(2) does not arise in the instant case, the Court will now consider the UST's

alternative argument that the case should be dismissed by force of § 707(b)(3). Section

707(b)(3) states, in relevant part, as follows:

> (3)    In considering under paragraph (1) whether the granting of
> relief would be an abuse of the provisions of [Chapter 7] in a case
> in which the presumption in subparagraph (A)(i) of such
> paragraph[2] does not arise or is rebutted, the Court shall consider  −
>
>> (A)    whether the debtor filed the petition in bad faith; or
>>
>> (B)    the totality of the circumstances . . . of the debtor's
>> financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3).

The UST makes no allegations of bad faith, but relies on § 707(b)(3)(B), the totality of

the circumstances of the Debtor's financial situation as the predicate of dismissal for abuse under

§ 707(b)(1). The Debtor mounts a dual pronged legal attack on this alternative basis upon which

the UST seeks dismissal of his Chapter 7 case. First, the Debtor argues that he has already

"litigated" his ability to pay under the guise of the Means-Test and prevailed by passing the test,

thereby debunking any presumption of abuse. The second argument of the Debtor is that even if

the ability to pay argument is available to the UST, without any additional allegations of

Debtor's misconduct, of which there are none, the UST has not met her burden under §

707(b)(3)'s totality of circumstances test. We will address these arguments *seriatim*.

Although conflicting statements may well exist in the Congressional Record, the Debtor

points to nothing in the legislative history giving a clear indication of Congressional intent to

make § 707(b)(2) the exclusive domain to determine ability to pay. On the contrary, the plain

language of § 707(b)(3), read in conjunction with § 707(b)(1) and (2), is clear, and compels a

conclusion that a court is mandated to consider a debtor's actual debt-paying ability where a

presumption of abuse does not arise under the Means-Test. Indeed, so far as we are aware, every

---

[2] Although "such paragraph" refers to "paragraph 1", § 707(b)(1)(A)(i) does not exist. Obviously, the presumption referred to in § 707(b)(3) is the presumption of abuse mentioned in § 707(b)(2)(A)(i).

court that has considered the issue has determined that where an above-median debtor passes the Means-Test, a debtor's ability to pay still plays a critical role when applying the totality of circumstances test under § 707(b)(3). *See, e.g., In re Booker*, 399 B.R. 662 (Bankr. W.D. Mo. 2009); *In re Walker*, 383 B.R. 830 (Bankr. N.D. Ga. 2008); *In re Parada*, 391 B.R. at 498-04; *In re Baeza*, 398 B.R. 692, 696-98 (Bankr. E.D. Cal. 2008); *In re Calhoun*, 396 B.R. 270 (Bankr. D. S.C. 2008); *In re Maya*, 374 B.R. at 754-55; *In re Henebury*, 361 B.R. 595 (Bankr. S.D. Fla. 2007); *In re Zaporski*, 366 B.R. 758, 769-71 (Bankr. E.D. Mich. 2007).  In sum, the totality of circumstances test under § 707(b)(3) is not tied to or limited by the Means-Test that drives § 707(b)(2).   By the plain meaning of § 707(b)(3)(B), the Court must consider the Debtor's actual financial situation.

The Debtor's second argument is also without merit.  Nothing in the text or structure of the totality of circumstances referenced in § 707(b)(3) suggests that a debtor's ability to pay, as a prerequisite for dismissal, be coupled with misconduct.  Section 707(b)(3) bifurcates "bad faith" and "totality of circumstances" as grounds for dismissal by listing them in separate subparagraphs phrased in the disjunctive.  Accordingly, "totality of circumstances . . . of the debtor's financial condition" constitutes a separate, distinct and independent ground for relief. *See In re Booker*, 399 B.R. at 667; *In re Parada*, 391 B.R. at 499; *In re Henebury*, 361 B.R. at 607; *In re Haar*, 373 B.R. 493, 499-500 (Bankr. N.D. Ohio 2007); *but see In re Nockerts*, 357 B.R. at 505-08 (holding that more than ability to pay is required to demonstrate abuse under § 707(b)(3)(B)).

## V.

The point of § 707(b)(2) is to provide an easily applied formula for determining when a court should presume that a debtor is abusing the system by filing a Chapter 7 petition.  It should be emphasized, however, that "the presumption of abuse is just that, a presumption."  *In re*

*Lenton*, 358 B.R. 651, 660 (Bankr. E.D. Pa. 2006).   Section 707(b), as enacted by BAPCPA,

contains two Chapter 7 ineligibility tests, the presumptive test under § 707(b)(2) and the actual

abuse test under § 707(b)(3).    On the whole, § 707(b) reflects a comprehensive statutory

framework designed to weed out abusive Chapter 7 filers.   Section 707(b)(2) functions as an

initial filter, disqualifying some debtors because they have an ability to pay.   Those debtors that

pass through this initial filter remain subject to full analysis under § 707(b)(3)(B).   *See Ross-*

*Tousey v. Neary*, 549 F.3d 1148, 1161-62 (7th Cir. 2008) ("Permitting a debtor to take a

deduction – even where that deduction puts the debtor's current monthly income below the

presumptive abuse threshold – does not insulate his case from dismissal.   Instead, it simply

means that the debtor's petition is not *presumed* abusive.   The UST can still request dismissal . . .

under Section 707(b)(3), either for bad faith or based on the totality of circumstances (which can

take into account a debtor's actual income and expenses.")) (emphasis in original) (citations

omitted); *In re Rudler*, 576 F.3d at 51 (describing § 707(b)(3)(B) as a "backup option" when the

UST is dissatisfied by the results of the "mechanical" Means-Test); *In re Randle*, 2007 WL

2668727, at *8 (describing § 707(b)(3)(B) as a "safety valve" that ensures that a Chapter 7

debtor that passes the Means-Test is not insulated from dismissal for abuse).

   The obvious meaning of the phrase "debtor's financial situation" must include a debtor's

actual income and expenses, since such income is the starting point for any analysis of an

individual's financial situation.   Veritably, a debtor's actual income and expenses, and the

resulting ability to pay, are central to the assessment of a debtor's financial situation.   *See In re*

*Booker*, 399 B.R. at 666.

   Where, as here, the presumption of abuse does not arise under the Means-Test, it is the

UST that bears the burden of proving abuse under § 707(b)(3).   *In re Goble*, 401 B.R. 261, 274

(Bankr. S.D. Ohio 2009); *In re Durczynski*, 405 B.R. 880, 883 (Bankr. N.D. Ohio 2009); *In re*

*Ansar*, 383 B.R. 344, 348 (Bankr. D. Minn. 2008); *In re Perotta*, 378 B.R. 434, 437 (Bankr. D.N.H. 2007) ("[w]here the presumption of abuse does not arise, the burden of proof is on the moving party to establish that the case was filed in bad faith or that the totality of the circumstances of a debtor's financial situation demonstrates abuse."). Such burden is to be carried by a preponderance of the evidence standard of proof. *In re Oot*, 368 B.R. 662, 665 (Bankr. N.D. Ohio 2007). Once a prima facie case is established by the UST, the burden of going forward with sufficient evidence to controvert the prima facie case is reposed in the non-moving party, the Debtor. *See In re Baker*, 400 B.R. 594, 597 (Bankr. N.D. Ohio 2009); *In re Lenton*, 358 B.R. at 664-65.

The Debtor has a stable source of formidable income from his employment and there is no indication that he is in danger of losing his job, or that he anticipates a material decrease in his income in the foreseeable future. Indeed, his annual salary of $134,928 exceeds the median income for a New York State household of one by more than three times. The Debtor's monthly income is $11,244 and he has no dependents. *See In re Wadsworth*, 383 B.R. 330, 333 (Bankr. N.D. Ohio 2007) ("Under any measure, a debtor, having a stable salary of almost $100,000, will be hard pressed to establish that they [sic] do not have the ability to pay some of their unsecured debt, such as through funding a Chapter 13 plan of reorganization."). In addition, the Debtor has decided to surrender the Properties and has ceased making monthly secured debt payments totaling $9,171. Income made available to debtors as a result of surrendering encumbered assets are properly considered as part of a totality of circumstances analysis under § 707(b)(3)(B). *See In re Goble*, 401 B.R. at 277; *In re Walker*, 383 B.R. at 836; *In re Haar*, 373 B.R. at 503; *In re Maya*, 374 B.R. at 753-54. No longer burdened with oppressive secured debt payments which consumes approximately 68% of his (pre-tax) income, the Debtor surely should have available consequential monthly income to fund a bankruptcy repayment plan.

15

In sum, we find that given the Debtor's stable employment, significantly above-median income, absence of dependants, and major reduction in expenses through the surrender of encumbered properties, the UST has presented a prima facie case that the Debtor, in light of the totality of his financial situation, has more than adequate monthly disposable income to make a meaningful distribution to his unsecured creditors under a bankruptcy repayment plan.    The Debtor, relying solely on legal argument found by this Court to be without merit, has failed to present any evidence of mitigating or aggravating circumstances under § 707(b)(3)(B) controverting the prima facie case proffered by the UST.

## VI.

Based on all of the foregoing, the UST's motion to dismiss under § 707(b)(1) is granted, predicated on § 707(b)(3)(B) and not § 707(b)(2).    In accordance with § 707(b)(1), the above-captioned Chapter 7 case is dismissed, unless the Debtor voluntarily converts the case to a case under Chapter 11 or Chapter 13 of the Bankruptcy Code.    The Debtor is given twenty (20) days after entry of this order to convert the case.    If the case is not so converted, the UST shall submit an order dismissing the case.


**IT IS SO ORDERED**


Dated:  Brooklyn, New York
        October 30, 2009




                                        s/Jerome Feller
                                        Jerome Feller
                                        United States Bankruptcy Judge